IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 28, 2018

## JOLETTA HINSON-BULL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 108080        G. Scott Green, Judge**

_____

### No. E2018-00469-CCA-R3-PC

_____

The Petitioner, Joletta Hinson-Bull, pleaded guilty to theft of property valued at more than $1,000, criminal impersonation, and driving on a revoked license. She agreed to be sentenced as a Range III offender to an effective sentence of ten years, to be served consecutively to her sentence from a conviction in a different county. The Petitioner filed a petition for post-conviction relief alleging that her counsel was ineffective and that her guilty plea was not knowingly and voluntarily entered. The post-conviction court denied the petition. On appeal, the Petitioner contends that the post-conviction court erred when it denied her post-conviction relief. After review, we affirm the post-conviction court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Joletta Hinson-Bull.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Charme Prater Allen, District Attorney General; and Ashley Dawn McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts
### A.  Guilty Plea Hearing

This case arises from the Petitioner's taking of a truck and driving it some distance before abandoning it. At her guilty plea hearing, the State summarized the facts it would have proven had the case gone to trial as follows:

Robert Hickman was warming his truck . . . up on October 26, 2015 . . . . [The Petitioner] did approach him and ask for a ride. Mr. Hickman told her no. [The Petitioner] walked off, at which time, Mr. Hickman went back inside of his house in order to get a baby seat for his grandson.

While he was in the house, the proof would be, [the Petitioner] came up to the truck that was running and stole the truck without his permission. Mr. Hickman does have a security camera affixed on his property and captured [the Petitioner] taking the truck.

The proof would be that Mr. Hickman began looking for the truck and was able to locate the truck and [the Petitioner]. When he saw [the Petitioner], she was near the woods. He contacted the police, [the Petitioner] then ran from the area into the woods, where she ran to the edge of a small cliff. She slid and caught herself on a tree branch.

Responding officers arrived on the scene and observed her hanging onto the branch, told her to hold on, at which time she was unable to keep her grip and she slid down 100 feet to the bottom.

The proof would be that [the Petitioner] was taken into custody and that this truck was valued at more than $1,000 and that Mr. Hickman did not give her permission to take possession of this truck.

On this stipulated factual basis, the trial court accepted the Petitioner's guilty pleas to theft of property valued at more than $1,000, criminal impersonation, and driving on a revoked license. The trial court entered the effective sentence agreed to by the parties of ten years as a Range III, persistent offender.

## B. Post-Conviction Facts

The Petitioner filed a *pro se* petition for post-conviction relief, later amended by counsel, in which she alleged that she had received the ineffective assistance of counsel and that her guilty plea was not knowingly and voluntarily entered. At a hearing on this petition, the parties presented the following evidence: The Petitioner testified that her attorney ("Counsel") had been appointed to represent her. While her charges were pending, Counsel relayed to her an offer for her to plead guilty. The Petitioner said that she was "under the impression" that, because of her medical issues at the time of the guilty plea, she could enter a guilty plea but "come back" later to court. She said she did not understand that if she took the plea agreement that her sentence would go into effect. She said, "I felt like within a year I would be able to come back on it." The Petitioner

2

conceded that, while her attorney did not tell her that, this was her "impression."

The Petitioner explained that while she was avoiding arrest she fell off of a 100-foot bluff. She broke her scapula, her spine in four places, all her ribs. She said that she had tubes on both sides of her chest, a fractured left leg, and a severely broken right leg. She recalled that there was a rod from her hip to her knee and that she had fifteen staples in her head. Her head injuries caused her to have seizures and had left her with a slight stutter and cognitive impairment.

The Petitioner testified that she suffered these impairments while Counsel represented her. She felt her injuries affected her ability to think and reason. The Petitioner said that she was in so much pain around the time of her guilty plea that she had no other option than accepting the plea deal. She said she was getting no medical treatment in the Knox County jail, including no pain medication despite her eighteen broken bones. The Petitioner said that Counsel told her that if she turned down the plea deal, she would be in jail until trial and, therefore, would not be receiving medical treatment. She felt forced to take the plea deal so that she could access medical treatment. She subsequently filed a lawsuit regarding her lack of medical treatment. The Petitioner knew that she would receive medical treatment if she was in the custody of the Tennessee Department of Correction ("TDOC"), and her need for medical treatment was her main concern. She said that she never would have accepted the plea deal but for her medical needs.

Counsel told her that she was facing "a couple of years" and told her that she would not serve the whole eight to twelve years but would serve forty-five percent of that time. The Petitioner said that Counsel never told her that she had an option other than accepting the State's offer or going to trial. She never knew that she could plead guilty and let the trial court determine her sentence.

The Petitioner agreed that she and Counsel discussed her pending charges for violating her probation from Jefferson County. She said that Counsel told her that the time for both of the charges would "run together" and that the Knox County sentence would begin after the Jefferson County sentence. The Petitioner clarified that Counsel said that the two sentences might run together. She was later informed that Jefferson County agreed to run the sentences concurrently but then learned that such was not the case. She reiterated that she thought she would have another chance in court because of the extent of her injuries. She asked that her judgment be vacated and that she have the opportunity for a trial.

Upon questioning from the trial court, the Petitioner agreed that she had taken the truck. She said, however, that she drove it only five miles down the road. The Petitioner

was unsure how many prior felony convictions she had before this conviction.

During cross-examination, the Petitioner testified that Counsel never told her that her sentences would definitely run concurrently. He told her that when she pleaded guilty in Jefferson County, which was after her guilty plea in this case, that Jefferson County might run her sentences concurrently. The Petitioner said that Jefferson County did, in fact, agree to run her sentences concurrently but that she later learned that her time would run consecutively.

The Petitioner agreed that during her plea colloquy she told the trial court that she was taking "Abozole, . . . Ibuprofen and Tramadol." She agreed that she was probably also on Elavil. She reiterated that she was in extreme pain and not receiving treatment in the Knox County jail and felt that her only option was to enter a plea of guilty to the charges. The Petitioner said that she answered the questions from the trial court during the guilty plea hearing truthfully but that she entered her plea believing she had no other option.

The Petitioner said that she understood that she was a Range III offender at the time of her guilty plea and also that she understood what that meant. The Petitioner did not remember the trial court's asking her about her injuries at the time of her guilty plea, and she did not remember telling the trial court about her broken bones. The Petitioner was unsure why she did not tell the trial court about her head injury. She said that her injuries were documented in her medical records, including her seizures.

During redirect examination, the Petitioner testified that she was 70 percent better than at the time of her guilty plea hearing. She was under the care of a neurologist in Nashville who planned to start her on new seizure medication. She said that, while she will always be in pain, her pain level at the time of the post-conviction hearing was "nowhere . . . close" to her pain level at the time of the guilty plea hearing.

Counsel testified that he worked as a public defender in Knox County and that he represented the Petitioner. He met with the Petitioner at the medical building in the detention facility before her preliminary hearing. Counsel said that, at that time, he and the Petitioner discussed her fall from the cliff and her injuries. He did not recall her telling him about a head injury, but he did remember her discussing her broken bones. He said he would not be surprised if she had a head injury, but he did not recall her telling him as much.

Counsel said that, when he met with the Petitioner, she was in an "extreme" amount of pain and that speaking was difficult for her. He recalled she was in a full body brace because of her broken ribs. Despite her pain, Counsel felt that the Petitioner

4

understood what he was saying to her.

Counsel said that he next spoke with the Petitioner at her preliminary hearing. At that time he got the charges reduced to theft in a D felony range, rather than the C felony range, based on the value of the truck that the Petitioner stole. The Petitioner gave him the make and model of the truck she had stolen, and he used that to look up the truck's value. Counsel said that the Petitioner seemed like she was in a lot of pain and "preoccupied with the pain," but she also appeared to understand what he was saying. Counsel said that the prosecutor offered the Petitioner a ten-year sentence as a Range III offender with the sentence to run consecutively to her Jefferson County cases. Counsel said he attempted to negotiate the offer down because he felt like the Petitioner had been very literally punished for her offenses by her injuries. He asked the prosecutor for mercy, but the prosecutor would not reduce the offer.

Counsel said he advised the Petitioner to "plead blind" because he felt that the trial court was more likely to sentence her to eight years rather than ten years. He specifically told the Petitioner her sentencing range, and she appeared to understand. Counsel said he was "very uncomfortable" with the Petitioner taking the prosecutor's offer and he advised her not to take it. Despite his advice, the Petitioner decided to take the State's offer. Counsel did not recall ever informing the Petitioner that she could come back after a year. He said the two may have discussed her appealing her sentence after she pleaded blind, if she chose to do so, but he did not know what the Petitioner was specifically referencing. Counsel said that the Petitioner did discuss her need for medical treatment with Counsel at the time of her guilty plea hearing.

Counsel said he did not remember the head injury or the staples, agreeing that he may be mistaken. He also did not remember any discussion with the Petitioner about Jefferson County choosing to run their case concurrently with the Knox County cases.

During cross-examination, Counsel said that he genuinely felt that the Petitioner was in a lot of pain and that her main goal was to get medical treatment as fast as possible.

Based upon this evidence, the post-conviction court denied the Petitioner relief, making the following findings:

The Petitioner's present complaint(s) center upon her assertion that the ten (10) year sentence from case #106780 runs consecutively to her Jefferson County convictions, and that she was incapable of entering a voluntary plea due to her medical condition at the time she entered her plea. The transcript of the Rule 11 plea colloquy from November 17, 2015 was entered as an

5

exhibit in this cause. That transcript reveals the Petitioner was advised multiple times that the agreement she was entering entailed consecutive service of the ten (10) year sentence. Moreover, as a matter of law, any felony conviction had to be served consecutively because [the Petitioner] was on parole at the time she committed the underlying theft. There exists no mention within the plea transcript that there existed any suggestion to run the Knox County convictions(s) concurrently with Jefferson County, and in fact, any such agreement would constitute an illegal sentence.

Likewise, this court deliberately and in great detail went over the plea agreement with this Petitioner. No evidence is present to suggest [the Petitioner] did not understand what she was doing and/or that any aspect of the plea was not a product of her free and voluntary choice. The evidence within this record leads to the unmistakable conclusion that [the Petitioner] made a conscious choice to enter an agreement as quickly as possible in order to reach the TDOC as quickly as possible. The fact that she is not in better health does not add constitutional infirmity to the previous choices made where the record reflects she made a conscious and knowing decision to accept the state's offer and plead guilty. This court accredits the testimony of [Counsel] that he counseled the Petitioner not to take the ten (10) year offer, but that [the Petitioner] chose to accept the offer to expedite her arrival within the Tennessee Department of Correction. The transcript of the plea hearing leads to the singular conclusion that the Petitioner made a knowing, intelligent, and voluntary choice in her election to accept the state's offer and plead guilty by way of an agreed upon information.

It is from that judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied her petition for post-conviction relief because her guilty plea was not knowingly and voluntarily entered because her decision to plead guilty was based on her need for medical treatment. She asserts that she was unable to knowingly and intelligently weigh her legal options due to the urgency of her medical needs. The State counters that the Petitioner concedes in her brief that Counsel did not mislead her. The State further notes that the evidence supports the post-conviction court's finding that the Petitioner had not proven that Counsel was deficient, or that but for his deficiency, the Petitioner would have rejected the guilty plea and gone to trial.

In order to obtain post-conviction relief, a petitioner must show that his or her

6

conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

7

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. This standard also applies to claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy the requirement of prejudice in a case involving a guilty plea, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he or she "would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

The Petitioner concedes that Counsel was not ineffective. Counsel testified that he encouraged the Petitioner not to take the plea agreement that included the sentence offered by the State. The Petitioner, of her own volition, decided to accept the plea offer because she believed that she would receive better medical care in TDOC. Her decision, which she may now regret, does not constitute grounds for post-conviction relief. She has failed to establish that her plea was unknowing or involuntary. The post-conviction

8

court did not err when it found that the Petitioner had not proven that she was entitled to post-conviction relief.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the post-conviction court's judgment.

_____

ROBERT W. WEDEMEYER, JUDGE